Wanamaker, J.,
dissenting. I dissent from the majority opinion and judgment in this case upon the ground that the doctrine therein declared is contrary to sound public policy, contrary to the constitution, and contrary to the pronouncement of this court made July 19, 1919, in the case of Fowler, Admx., v. City of Cleveland, 100 Ohio St., 158. The following judges concurred in that judgment, Nichols, C. J., Matthias, Donahue, Wanamaker and Robinson.
Not content with the grounds upon which the majority opinion was placed in that case, though content with the judgment, I prepared a separate concurring opinion, which I adopt in this case. Judge Jones was the sole judge dissenting in the Fowler case.
*350 Some seem to think that government antedated man, and that for some mysterious purpose man was especially created in order that government might have something to operate upon, something upon which to exercise its so-called “functions.”
I always understood the contrary to he true. Possibly, if we shall look to some of the old landmarks of the law, as laid down by the American fathers, we may be able to correct some of the illusions concerning some of the powers and purposes of government.
American independence was born in 1776, with the declaration:
“We hold these truths to be self-evident, that all men # * * are endowed by their creator with certain unalienable rights, that among these are life, liberty and the pursuit of happiness. That to secure these rights, governments are instituted among men,” etc.
The fathers obviously favored the idea that the primary purpose of government was “to secure,” to protect, to defend these rights.
When the Ohio fathers met in their constitutional convention to deal with the purposes of the state government, they declared in their preamble: “We, the people of the State of Ohio, grateful to Almighty God for our freedom, to secure its blessings and promote our common welfare, do establish this constitution.”
And, first of all, they wrote a bill of rights:
Article I, Section 1. “All men * * * have certain inalienable rights, among which are those of enjoying and defending life and liberty * * * and seeking and obtaining happiness and safety.”
*351 ■Section 2. “Government is instituted for their equal protection and benefit.”
In that same bill of rights the fathers declared in Section 16:
“All courts shall be open and every person, for; an inf wry done him in his land, goods, person, orj reputation, shall have remedy by due course of law, and shall have justice administéred without denial j or delay.”
I stand firmly and finally upon these constitutional declarations of the sovereign people. I emphatically deny the right of any of the servants of those sovereign people to in any wise change or curtail those rights, either by legislative declaration or judicial decree.
Academically, we all concede that constitutional law is paramount to any legislative law or judicial law. Actually, we know the exact contrary to be obvious and frequent in the books of the law and decisions of our courts. No more notable instance of this subordination of constitutional law to judicial law can be found anywhere in the Ohio courts than in the judgment and opinion of this case.
The constitutional language is “every person.” Surely that applies to Mary Aldrich in this case. The language of the constitution is “an injury,” that is, any injury of a substantial nature to one’s lands, goods, person or reputation; in this case to the person. Then follows the mandatory language of the constitution, “shall have remedy by due course of law” and “shall have justice administered without denial or delay.”
Does the constitution make or. suggest any exceptions according to who inflicts the injury, who causes the injury?
*352 Government, the Guardian oe the People in Their Unalienable Eights.
If these landmarks of the law laid down by the fathers who founded the American states and the American nation are to prevail in the administration of justice, then all governments, including certainly municipal governments, can be gauged in their relations to the people as guardians of the people, and the people as wards of that guardian so far as their unalienable rights to life, liberty, and the pursuit of happiness are concerned and secured.
True, the sovereign people may themselves surrender a part of those rights, may limit and qualify them in their organic law, but, until they do so, those rights remain intact, and it is the primary duty of the government to' respect and redress those rights by whomsoever violated.
Note again the language in Section 16 of the bill of rights, adopted September 3, 1912:
“All courts shall be open and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law.”
This self-evident, . self-executing declaration of right, remedy and justice is in no wise qualified by the phrase “laws may be passed” or “when provided by law.” This constitutional declaration was in no wise made dependent, upon any legislative law, save as to course of procedure. No procedure, however, could deny or curtail the right or remedy.
*353 It is an astounding proposition to say that if gov-f eminent he the guardian of the unalienable rights'; of man, including of course human life, that sames government or political subdivision thereof mays wrongfully take the life of any of its citizens with! immunity, and the citizen’s representatives or sur-f vivors be utterly without any remedy.
Surely the fathers who wrote that declaration in the bill of rights never so contemplated. The very fact that the constitutional convention of 1912 reaffirmed Section 16 of the bill of rights and added to it this language, “suits may be brought against the state, in such courts and in such manner, as may be provided by law,” reaffirmation followed by amendment, clearly and convincingly extends the liability to even the state, leaving it for the legislature to prescribe merely as to the court and the manner of procedure.
The old idea of the irresponsibility of the sovereign for wrongful acts to the citizens was based upou the old-time monarchical fallacy that “the king can do no wrong.” That doctrine has found no favor in America since our Declaration of Independence, and the new amendment to the constitution, in view of a former decision of this court, plainly intended that the state should be no longer immune from its full measure of liability for any wrong done to any of its citizens.
For years and years such liability had been recognized as against counties and municipalities, and the very fact that a municipal corporation is once organized and proceeds to function as such not only gives it the right to sue in defense of its corporate *354 rights, hut also imposes upon it a corollary liability to be sued for its wrongs.
Now, the second paragraph of the syllabus plainly admits that a statute expressly providing for municipal liability would be sufficient to create that municipal liability. It is a novel proposition, to say the least, that when a liability is declared in the constitution there is need, for the general assembly to further declare that same liability in a statute. It is tantamount to saying that before a right granted by the constitution shall have potential force it must be vitalized by a redeclaration of that right in a statute. The bill of rights might have so provided. It is sufficient to say that it did not so provide.
In this day, when it is most obvious that the field of private corporations is being daily decreased, and the field of public corporations correspondingly increased in the line of ownership and operation of public utilities, what is to be the outcome of human life so recklessly and ruthlessly taken by the officers, agents and servants of the public corporations, without right or remedy upon the part of the injured parties or their deceased representatives'?
This case expressly and necessarily reverses the case of Fowler, Admx., v. City of Cleveland, 100 Ohio St., 158, in which it was held in the first paragraph of the syllabus:
“1. Section 16, Article I of the Constitution, guarantees to every person for injury done him in his lands, goods, person or reputation remedy by due course of law.”
It is refreshing to return to some of these old constitutional guaranties, and to realize that this court has at times recognized them. That case was pro *355 claimed to be a substantial step forward in the conservation of human rights, and yet it did nothing more or less than attempt to realize what had been a long time written in our organic law.
That case required the overruling of the Frederick case, in 58 Ohio St., page 538. By the decision in this Aldrich case, the Frederick case is now reinstated and the Fowler case is reversed, notwithstanding the constitutional guarantee and grant.
In this case, Judge Jones writes the opinion of the court in support of the judgment, setting forth the “reasons therefor,” as required by the constitution. I have carefully examined the majority opinion and to my entire amazement I utterly fail to find a single, solitary reference in that opinion to the Ohio constitution or its bill of rights. It brings back with tremendous force the old proposition — the sovereign people may make what constitution they please, but give me the supreme court, that construes and applies that constitution, and I care not who makes the constitution or what it contains.
In the various cases cited in support of the judgment not a single one refers to any constitutional grant or guarantee as to human rights; nor attempts in any wise to review, reverse or distinguish them. These decisions are all mere dietums. They are in substance “thus saith the court,” not “thus saith the constitution.”
It may be well to here return to the oath of the supreme judge and every other judge of Ohio. It reads:
‘‘ Sec. 3. The oath of office of each judge of a court of record shall be to support the constitution of the *356 United States and the constitution of this state, to administer justice without respect to persons, and faithfully and impartially to discharge and perform all the duties incumbent on him as such judge, according to the best of his ability and understanding.”
I have italicized the most significant portions of this oath relating to the present case. I find in this oath an obligation on the judge to support “the constitution of this state.” I find no requirement to support “the decisions of this court.”
I find further in this oath that the judge is to act the discharge of his duties “according to the best of his ability and understanding, ” and not merely according to the ability and understanding of some other court, which merely announces a declaration and dictum.
The soundness of a decision must be judged by the degree in which it is rooted in reason and righteousness. A judgment that does not contribute to j'usticels fatally at fault. The lowering of the safeguards to human life, the limitations on recovery for wrongful death, by whomsoever wrongfully com- ■ mitted, are all in violation of the plain and peremptory provisions of our constitution, our bill of rights, and contrary t.o_ the spirit of our times.
For further reasons touching the grounds of this dissent I refer to my concurring opinion in the Fowler case.